**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>　　　　FRED DEUTSCH,<br><br>　　　　　　　　　　　　　　Debtor. | **FOR PUBLICATION**<br><br>Chapter 7<br>Case No. 15-13369 (MG) |
| LUPE DEVELOPMENT PARTNERS, LLC and STEVEN MINN,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>FRED DEUTSCH,<br><br>　　　　　　　　　　　　　　Defendant. | Adv. Pro. No. 16-01216 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING A DISCHARGE TO THE DEBTOR UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE**

*A P P E A R A N C E S:*

COZEN O'CONNOR
*Attorney for Plaintiffs Lupe Development*
*Partners, LLC and Steven Minn*
33 South Sixth Street, Suite 4640
Minneapolis, MN 55402
　By:　Thomas G. Wallrich, Esq.
　　　　Joel D. Nesset, Esq.

　　　　　-and-

277 Park Avenue
New York, NY 10172
　By:　Frederick E. Schmidt, Jr., Esq.

FRED DEUTSCH
*Pro se Defendant*

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before this Court is the motion for summary judgment filed by Lupe Development Partners, LLC ("Lupe") and Steven Minn ("Minn," together with Lupe, the "Plaintiffs"), the Plaintiffs in the above-captioned adversary proceeding (the "Adversary Proceeding"), seeking a determination that Fred Deutsch's ("Deutsch," or the "Debtor") debts to the Plaintiffs are excepted from discharge under section 523(a)(2)(A) of the Bankruptcy Code (the "Motion," ECF Doc. # 19). The Motion is supported by a declaration by Minn (the "Minn Declaration," ECF Doc. # 19-2),[1] and the Plaintiffs' Statement of Undisputed Facts Pursuant to Local Rule 7056-1 (the "Plaintiffs' SUF," ECF Doc. # 20).

The Adversary Proceeding arises from fraud perpetrated by Deutsch in connection with the parties' plan to develop a property in Minneapolis, Minnesota (the "Minnesota Property," or the "Property"). The Plaintiffs initially contracted with Deutsch to assist him to develop the Property, and Minn agreed to personally guaranty a loan to facilitate the purchase of the Property. But as a result of Deutsch's defaults in connection with the development project, the Plaintiffs eventually sued Deutsch for damages (the "Minnesota Action") in Minnesota State Court (the "State Court"). The State Court entered a default judgment (the "Default Judgment") against Deutsch in the amount of $344,363.23 in favor of Lupe and $1,594,633.90 in favor of Minn.

Importantly here, the State Court made findings of fact and conclusions of law in the Default Judgment that Deutsch engaged in fraudulent conduct (the "State Court Findings," ECF Doc. # 19-2 at 18–30). The Plaintiffs thereafter joined in an involuntary petition naming

---

[1] The Minn Declaration attaches as Exhibit C the Findings of Fact and Conclusions of Law and Order entered on December 17, 2010 by the Minnesota State Court in *Lupe Development Partners, LLC and Steven Minn v. Pacific Flats I, LLC, Pacific Flats II, LLC, Fred Deutsch, and Deutsch Development*, Case No. 27-CV-09-30240 (Minn. Dist. Ct., 4th Jud. Dist., Dec. 17, 2010). (ECF Doc. # 19-2 at 18–30.)

2

Deutsch as the debtor, and filed this Adversary Proceeding seeking a judgment that Deutsch's debts to the Plaintiffs in the amounts awarded in the Minnesota Action are excepted from discharge under section 523(a)(2)(A), because the debts arose from Deutsch's false representations. The Plaintiffs now argue that Deutsch is collaterally estopped from denying the State Court Findings, which, together with the Plaintiffs' SUF, establish the elements of section 523(a)(2)(A) of the Bankruptcy Code, entitling the Plaintiffs to summary judgment holding that Deutsch's debts to the Plaintiffs are excepted from discharge.

The Court concludes that the State Court Findings and the Plaintiffs' SUF satisfy the elements of a claim under section 523(a)(2)(A). The State Court Findings are given preclusive effect, and the debts, which arose from Deutsch's fraudulent conduct, are not dischargeable. The Plaintiffs' Motion is thus **GRANTED**.

## I.    BACKGROUND

### A.    Factual Findings[2]

#### 1.    The Project

In 2006, Deutsch and Minn negotiated an agreement whereby Lupe would provide real estate pre-development work to Deutsch to assist Deutsch in developing the Minnesota Property for mixed-use development (the "Project"). (Plaintiffs' SUF ¶ 2.) Pursuant to the parties' agreement, Lupe assumed the responsibilities of coordinating governmental approvals, architect and contractor selection, environmental remediation, and financial analysis, and would be compensated $12,500 per month. (*Id.* ¶¶ 2, 3.) Before committing to the Project, Minn

---

[2]    Unless otherwise indicated, the Court's factual findings are taken from the State Court Findings, *and* the Plaintiffs' SUF. The Plaintiffs' SUF is undisputed by Deutsch, and therefore deemed admitted for the purposes of this Motion. *See* Local Bankr. Rule 7056-1 (stating that each fact included in a Rule 7056-1 statement of facts "shall be deemed admitted for purposes of the motion unless specifically controverted by [a] statement . . . by the opposing party"). While the Court recognizes the difficulty that *pro se* litigants, such as Deutsch, may sometimes face in complying with all of the local rules, Deutsch's deemed admissions are contained in the State Court Findings, which, as described in detail below, are given collateral estoppel effect here.

conducted due diligence to ensure Deutsch had the financial wherewithal to undertake the Property development. (*Id.* ¶ 4.) Minn obtained from Deutsch various financial documents, including Deutsch's and his spouse, Penny Drue Baird's ("Baird"), personal financial statements and 2005 tax returns. (*Id.* ¶ 5.) According to the Plaintiffs, during 2006 and 2007, Minn made several trips to New York to meet with Deutsch to discuss the Project, and during one of the meetings, Deutsch introduced Minn to Baird, who would be the interior design consultant for the Project. (Minn Declaration ¶ 10.) The woman introduced to Minn as Baird was allegedly present at several additional meetings between Minn and Deutsch. (*Id.*)

In 2007, to facilitate the purchase of the Property by Pacific Flats II, LLC (a limited liability company of which Deutsch was the sole member), Minn agreed to personally guaranty a loan (the "Loan") for the Property from Bridgewater Bank (the "Bank"). Minn specified that his guaranty of the Loan was subject to the conditions that: (i) Deutsch and Baird would be the primary guarantors of the Loan; (ii) Deutsch and Baird would agree to indemnify Minn for any loss arising from Minn's guaranty; and (iii) Deutsch and Baird would provide personal financial statements and tax returns evidencing their financial condition to Minn and the Bank. (Plaintiffs' SUF ¶ 11.) Accordingly, Deutsch provided Minn and the Bank copies of Deutsch's and Baird's 2006 federal tax returns, and personal financial statements representing that, as of December 31, 2006, Deutsch's and Baird's net worths were $34,350,000 and $23,450,000, respectively. (*Id.* ¶ 12.) Deutsch also provided to Minn an Indemnity and Guaranty Agreement, and represented that Baird would provide the same. (*Id.* ¶ 13.) Finally, Deutsch delivered to the Bank his own personal guaranty, and a guaranty purportedly executed by Baird (the "Baird Guaranty"), both of which included a notary seal of Deutsch's attorney, Ira B. Stechel. (*Id.* ¶ 14.) In reliance on these representations, Minn personally guaranteed the Loan. (*Id.* ¶ 15.)

4

      2.  *The Minnesota Action*

In 2009, the Plaintiffs brought an action in Minnesota State Court against Deutsch,[3] styled as *Lupe Development Partners, LLC and Steven Minn v. Pacific Flats I, LLC, Pacific Flats II, LLC, Fred Deutsch, and Deutsch Development*, Case No. 27-CV-09-30240, alleging that Deutsch defaulted on agreements made with the Plaintiffs in connection with the Project. The Plaintiffs also discovered that Deutsch had made several misrepresentations in connection with the Project. Most importantly here, the Plaintiffs learned—and Deutsch does not dispute—that Baird never executed the personal guaranty delivered to the Bank at the closing of the loan.[4] (Plaintiffs' SUF ¶ 17.) Deutsch responded to the complaint in the Minnesota Action, but was uncooperative during discovery, refusing to provide documents to the Plaintiffs, failing to attend his own deposition and failing to comply with several discovery orders. (Minn Declaration, Ex. C (State Court Findings) at 18–19.)

Based on the foregoing facts, on December 17, 2010, the Plaintiffs obtained the Default Judgment against Deutsch in the Minnesota Action in the amount of $344,363.23 in favor of Lupe and $1,594,633.90 in favor of Minn. (Plaintiffs' SUF ¶ 19.) The State Court made the following pertinent findings of fact and conclusions of law:

- Minn "agreed to guaranty the [Bridgewater Bank] loan upon the conditions that: a) [Deutsch] and [Baird] would be primary Guarantors of the [Bank's] financing; and b) [Deutsch] and [Baird] would indemnify Minn in connection with the making of any guaranty." (*Id.* ¶ 18 (quoting the State Court Findings).)

---

[3] The Minnesota Action was brought against several additional parties, including Baird (*see* Minn Declaration ¶ 26) and entities with which Deutsch was associated, including Pacific Flats II, LLC. *See Lupe Development Partners, LLC and Steven Minn v. Pacific Flats I, LLC, Pacific Flats II, LLC, Fred Deutsch, and Deutsch Development*, Case No. 27-CV-09-30240 (Minn. Dist. Ct., 4th Jud. Dist., Dec. 17, 2010).

[4] Baird was originally named a defendant in the Minnesota Action, and in an affidavit submitted in support of her motion to dismiss the claims against her, she asserted that she did not execute the Baird Guaranty. (Plaintiffs' SUF ¶ 17; Minn Declaration ¶ 26.)

5

- Deutsch "provided Minn an Indemnity and Guaranty Agreement dated December 19, 2007 and represented that [Baird] would provide a similar document upon her return from Paris, France." (*Id.*)

- Deutsch's delivery of various documents, including the personal guaranty bearing Baird's forged signature, "operated as a fraud upon Bridgewater Bank and Minn." (*Id.*)

- The Indemnity and Guaranty Agreement had been triggered by the fraud or material misrepresentations of Deutsch in securing the loan from the Bank and the guaranty of Minn. (Minn Declaration ¶ 29 (citing the State Court Findings).)

### B. The Adversary Proceeding

On December 28, 2015, the Plaintiffs joined in an involuntary petition naming Deutsch as the debtor, and on April 26, 2016, the Court entered an order for relief. (ECF Doc. # 1, the "Adversary Complaint," at 2.) On October 10, 2016, the Plaintiffs filed the Adversary Complaint, seeking a judgment that Deutsch's debts to the Plaintiffs in the amounts awarded in the Minnesota Action (plus post-judgment interest) be excepted from discharge. (*Id.* at 7.) On February 22, 2017, the Plaintiffs made a motion for a default judgment in the Adversary Proceeding because Deutsch failed to timely respond to the Adversary Complaint (the "Motion for Default Judgment," ECF Doc. # 12). On March 16, 2017, this Court issued an order denying the Motion for Default Judgment, and conditionally vacating a certificate of default that had been entered on the docket, provided that Deutsch file an answer to the Adversary Complaint. (ECF Doc. # 14.) On March 27, 2017, Deutsch filed an answer to the Adversary Complaint (the "Answer," ECF Doc # 15).

On May 8, 2017, the Plaintiffs filed the Motion, seeking entry of summary judgment holding that Deutsch's debts to the Plaintiffs are excepted from discharge because the Default Judgment should be given preclusive effect, and, the State Court Findings and Plaintiffs' SUF establish the requisite elements of section 523(a)(2)(A). According to the Plaintiffs, (i) Deutsch's forgery of Baird's signature constitutes a false representation; (ii) Deutsch knew the

6

representation was false when made; (iii) Deutsch made the representation with the intention of deceiving the Plaintiffs; (iv) the Plaintiffs justifiably relied on Deutsch's representation; and (v) the Plaintiffs sustained damages as the proximate consequence of Deutsch's false and material representation. (Mot. at 16–20.) Deutsch did not file an opposition to the Motion, but on June 2, 2017, he filed a one-page letter to the Court stating that he had "decided not to respond to the . . . [a]dversary matter." (ECF Doc. # 21.) Deutsch nevertheless appeared at the argument of the Motion and urged the Court not to enter summary judgment.

## II. LEGAL STANDARD

### A. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To successfully assert that a fact is not in dispute or cannot be disputed, a movant must

> cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or show[] that the material cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. § 56(c)(1). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law." *Vyshedsky v. Soliman (In re Soliman)*, 515 B.R. 179, 185 (Bankr. S.D.N.Y. 2014) (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995)).

7

Under Local Rule 7056-1, motions for summary judgment must be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue to be tried, and each fact included in the statement "shall be deemed admitted for purposes of the motion unless specifically controverted by [a] statement . . . by the opposing party." Local Bankr. R. 7056-1. The Court may grant summary judgment based on the uncontested facts in the moving party's Rule 7056-1 statement of facts. *See, e.g.*, *Lawson v. Jubelt (In re Jubelt)*, 2012 WL 4738631, at *6 (Bankr. S.D.N.Y. Oct. 3, 2012) (granting summary judgment based on the plaintiff's uncontroverted statement of undisputed facts, and stating that "[t]he burden . . . fell on [the defendant] to submit a counter 7056-1 fact statement specifically controverting any disputed assertions in *[the plaintiff's] 7056-1 Statement,* but he failed to do so. Accordingly, the facts set forth in *[the plaintiff's] 7056-1 Statement* are deemed admitted, and the Court may grant summary judgment on the basis of uncontested assertions in the moving party's 7056-1 Fact Statement"). Here, each of the material facts included in the Local Rule 7056-1 statement of undisputed facts was taken from the findings of fact of the Minnesota State Court.

### B.     Collateral Estoppel

The principle of collateral estoppel, also known as issue preclusion, applies in a denial of a discharge proceeding. *See Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 119 (Bankr. S.D.N.Y. 2008) (applying collateral estoppel in a denial of discharge adversary proceeding). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *See Soliman*, 515 B.R. at 185 (quoting *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997); 28 U.S.C. § 1738). Thus, Minnesota's preclusion rules govern this dispute.

8

In Minnesota, collateral estoppel applies when "(1) the issue to be addressed is identical to an issue in a prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party received a full and fair opportunity to be heard on the adjudicated issue." *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 534 (Minn. 2015) (citing *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982)). This is so, "irrespective of whether the subsequent action is predicated upon the same or a different cause of action." *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 927 (Minn. 2015) (quoting *Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn. 1978)). A "default judgment may be given full preclusive effect as to all issues pleaded in the underlying complaint . . . as to those issues." *North Tel, Inc. v. Brandl (In re Brandl)*, 179 B.R. 620, 626 (Bankr. D. Minn. 1995). A default judgment is "a final determination of the facts essential to its existence," even if the defendant did not interpose a defense in the action. *Id.* (quoting *Herreid v. Deaver*, 259 N.W 189, 190–91 (Minn. 1935)).

Bankruptcy courts in the Eighth Circuit have examined Minnesota preclusion law as applied in denial of discharge adversary proceedings, and have likewise held that the doctrine of collateral estoppel applies in dischargeability of debt proceedings in bankruptcy courts. For example, in *KYMN Inc. v. Langeslag (In re Langeslag)*, 366 B.R. 51 (Bankr. D. Minn. 2007), the Minnesota Bankruptcy Court explained:

> The doctrine of collateral estoppel, or issue preclusion, applies when the parties to a dischargeability proceeding in a bankruptcy case have gone through pre-petition litigation in a non-bankruptcy forum and have received a judgment against the debtor on the underlying debt. It binds the debtor on those issues of law or fact that are common to both proceedings, and that were settled by adjudication in the earlier proceeding. If the preclusive findings from the earlier proceeding are sufficient to establish all of the

9

> elements of non-dischargeability on the specific theory pleaded in the bankruptcy court, the plaintiff then is entitled to entry of judgment that the debt is nondischargeable, as a matter of law and without the need for further development of evidence. The existence of the basic, underlying liability is settled by the doctrine of res judicata, or claim preclusion; the pre-petition entry of a final judgment in a state court that fixed and liquidated the liability prohibits a defendant in a dischargeability proceeding from challenging the existence of the debt and from raising defenses to liability that were available in the state-court lawsuit.

*Id.* at 56–57 (internal citations omitted); *see also Sailor Music v. Walker (In re Walker)*, 477 B.R. 111, 115 (Bankr. E.D. Mo. 2012) (stating that "[t]he principles of collateral estoppel apply in proceedings to determine the dischargeability of debt in bankruptcy court").

      **C.**    **Section 523(a)(2)(A) – Actual Fraud, False Representations, False Pretenses**

Consistent with the Bankruptcy Code's policy in favor of providing the debtor with a "fresh start," exceptions to discharge must be construed narrowly against the creditor in favor of the debtor. *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007) (citing *Nat'l Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996)). Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses or actual fraud . . . ." Thus, to object to the discharge of a debt under section 523(a)(2)(A), a creditor must show:

    i.    The debtor made a false representation;

    ii.    At the time the representation was made, the debtor knew it was false;

    iii.    The debtor made the representation with intent to deceive the creditor;

    iv.    The creditor justifiably relied on the representation; and

    v.    The creditor sustained loss or damage as a proximate consequence of the false representation.

10

*Chase Bank, USA, N.A. v. Vanarthos (In re Vanarthos)*, 445 B.R. 257, 262 (Bankr. S.D.N.Y. 2011); *see also Owens v. Owens (In re Owens)*, 2005 WL 387258, at *1–2 (Bankr. S.D.N.Y. 2005); *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 71–72 (Bankr. S.D.N.Y. 1999); *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 422 (Bankr. S.D.N.Y. 1991). The creditor bears the burden of proving these elements by preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286 (2002).

In interpreting the elements of section 523(a)(2)(A), "[t]he Court looks to the common law of torts, as embodied in the Restatement (Second) of Torts." *Lubit*, 372 B.R. at 130. For the purposes of section 523(a)(2)(A), a false representation means that "(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant." *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009). Omissions of fact can qualify as false representations: "A false representation can be shown through either an express statement or through an omission where the circumstances are such that disclosure is necessary to correct what would otherwise be a false impression." *Signature Bank v. Banayan (In re Banayan)*, 468 B.R. 542, 574–75 (Bankr. N.D.N.Y. 2012) (citations omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 529 (1976) ("A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation."). It does not matter whether the debtor believes that the undisclosed fact is material. *See* RESTATEMENT (SECOND) OF TORTS § 529, *cmt. b* ("Whether or not a partial disclosure of the facts is a fraudulent misrepresentation depends upon whether the person making the statement knows or believes that the undisclosed facts might affect the recipient's conduct in the transaction in hand. It is immaterial that the defendant believes that

11

the undisclosed facts would not affect the value of the bargain he is offering.  The recipient is entitled to know the undisclosed facts in so far as they are material and to form his own opinion of their effect.").

In addition, a debtor's "intent to deceive" need not be express; it "may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that [he] did intend to deceive and cheat the [creditor]." *Hong Kong Deposit and Guar. Co. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y. 1990) (citations omitted); *see also Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396–97 (Bankr. E.D.N.Y. 2005) (stating that "it is well established that intent to deceive may be established through circumstantial evidence and inferred from the totality of the evidence presented").  This Court has held that intent to deceive under section 523(a)(2)(A) can also be satisfied if the debtor acted with reckless disregard for the truth, with the recklessness of the debtor's behavior determined from the totality of the circumstances.  *See Medina v. Paredes (In re Paredes)*, 2017 WL 2603687, at *4–6 (Bankr. S.D.N.Y. June 15, 2017).

### III.    DISCUSSION

Here, the Court finds that the Plaintiffs have satisfied the requirements of Minnesota law for the Default Judgment to be given collateral estoppel effect in this denial of discharge proceeding, and that the State Court Findings and Plaintiffs' SUF establish the elements of section 523(a)(2)(A).

### A.    Minnesota Law Would Give Preclusive Effect to the Default Judgment

*1.    The Issues are Identical*

Identity of the issues exists, as the State Court Findings are substantially similar to the elements of section 523(a)(2)(A), that (i) the debtor made a false representation, (2) that he knew was false at the time, and (3) the creditor justifiably relied on the representation, (4) resulting in a loss or damages. The State Court specifically found that Deutsch knowingly made a false representation to obtain the Loan through the use of Baird's forged signature on the Baird Guaranty. According to the State Court, Deutsch's delivery of the personal guaranty bearing Baird's forged signature, "operated as a fraud upon [the] Bank and Minn." (Plaintiffs' SUF ¶ 18.) The State Court also found that Minn justifiably relied on Deutsch's false representation, finding that Minn only agreed to guaranty the Loan on the conditions that "a) [Deutsch] and [Baird] would be primary Guarantors of the Bridgewater financing; and b) [Deutsch] and [Baird] would indemnify Minn in connection with the making of any guaranty." (*Id.*) The State Court further found that Deutsch's false representation resulted in a loss or damages, as it awarded Plaintiffs $344,363.23 and $1,594,633.90, respectively, based on the allegations in the State Court Action. (*Id.*) The identity-of-the-issues element is therefore satisfied. *See All Finish Concrete, Inc. v. Erickson*, 899 N.W.2d 557, 567 (Minn. Ct. App. 2017) (stating that "[f]or collateral-estoppel purposes, issues are identical when the issues presented by the current litigation are in substance the same as those resolved in the previous litigation") (citation omitted).

*2.    There was a Final Judgment on the Merits*

The second requirement under Minnesota law, that there was a final judgment on the merits, is likewise met. A final judgment is one that concludes the litigation on the merits and leaves nothing for the court to do but execute the judgment. *See T.A. Schifsky & Sons, Inc. v.*

13

*Bahr Constr., LLC*, 773 N.W.2d 783, 788 (Minn. 2009). In Minnesota, a default judgment may satisfy this element "[s]o long as the entering court had personal and subject-matter jurisdiction over the prior litigation, and so long as the earlier judgment was not procured by fraud or collusion." *See Radermacher v. Sullivan (In re Sullivan)*, 122 B.R. 720, 723 (Bankr. D. Minn. 1991) (applying collateral estoppel principles in an adversary proceeding determining dischargeability of a debt where a state court previously entered a default judgment against the debtor). Deutsch does not dispute that the State Court had personal and subject-matter jurisdiction in the State Court Action, and there is no evidence the Default Judgment was obtained improperly. The Default Judgment is thus final.

    3.  *Deutsch was a Party to the Minnesota Action*

There is no dispute that the party to be estopped here, Deutsch, was a party to the Minnesota Action in which the Default Judgment was adjudicated.

    4.  *Deutsch Received a Full and Fair Opportunity to Litigate the Adjudicated Issues*

Deutsch had a full and fair opportunity to litigate the issues in the Minnesota Action. He responded to the Plaintiffs' complaint, and there is no evidence that he was denied an opportunity to fully litigate the case. Indeed, Deutsch's failure to meaningfully participate in the Minnesota Action was a result of his own intentional thwarting of the discovery efforts by the Plaintiffs: he refused to provide documents to the Plaintiffs, failed to attend his deposition and failed to comply with several discovery orders. (Minn Declaration, Ex. C (State Court Findings) at 18–19.) Under Minnesota law, a default judgment is "a final determination of the facts essential to its existence," even if the defendant did not interpose a defense in the action. *See, e.g.*, *Brandl*, 179 B.R. at 626 (holding that party to a default judgment had full and fair opportunity to be heard on the adjudicated issue even though the party did not put forth a defense

14

because it did not timely serve an answer to the complaint). Deutsch should not be permitted to avoid the application of collateral estoppel here on the ground that he did not have an opportunity to litigate the issues, when he willingly repudiated his opportunity. Accordingly, Deutsch is collaterally estopped from denying the State Court Findings.

### B.    The Elements of Section 523(a)(2)(A) are Satisfied

The Court similarly finds that the State Court Findings and Plaintiffs' SUF satisfy the five elements of section 523(a)(2)(A) rendering Deutsch's debts to the Plaintiffs non-dischargeable. The State Court expressly found that (i) Deutsch delivered to the Bank a personal guaranty with Baird's forged signature (ii) to induce the Plaintiffs to guaranty the Loan, supporting that Deutsch's debts to the Plaintiffs were obtained by false pretenses or fraud.

As to the first element, the Minnesota State Court found that Deutsch's delivery of the personal guaranty bearing Baird's forged signature "operated as a fraud upon Bridgewater Bank and Minn." (Plaintiffs' SUF ¶ 18.) The State Court also found that "[t]he Indemnity and Guaranty Agreement has been triggered . . . by the fraud and material misrepresentations of Fred Deutsch in securing the loan from Bridgewater Bank and the Guaranty of Steven Minn." (*Id.*) The Debtor failed to submit any facts disclaiming responsibility for the forged signature on the Baird Guaranty, or any alternative explanation for the forgery. Moreover, in the Answer, the Debtor "admit[s] the guaranty was not executed by Baird." (Answer ¶ 22.) The only reasonable conclusion to draw from the facts is that the Debtor (who stood to benefit from the forgery, and delivered the forged signature) is responsible. *See, e.g.*, *Auto. Fin. Servs., Inc. v. Youngblood (In re Youngblood)*, 167 B.R. 870, 873 (Bankr. W.D. Tenn. 1994) (finding that a "debtor's misrepresentation, omission, and fraudulent actions in obtaining financing from plaintiff by having his wife's signature forged, constitute an actual fraud" under section 523(a)(2)(A)).

15

The State Court's finding that the Debtor engaged in fraud establishes that the Debtor knew his representation was false when made. And Deutsch's intent to deceive can also be inferred both from the totality of the circumstances—which paint a picture of Deutsch's general deceptive conduct—and from his recklessness of the truth in supplying his wife's fraudulent signature, a "misstatement of fact which the Debtor [knew or should have known] [would have] induc[ed]" the Plaintiffs to act. *Ardizzone v. Scialdone (In re Scialdone )*, 533 B.R. 53, 60 (Bankr. S.D.N.Y. 2015) (internal citation omitted).

The Court also finds that the Plaintiffs justifiably relied on Deutsch's representation to their detriment. The State Court found that Minn only agreed to guaranty Deutsch's Loan from the Bank "upon the conditions that: a) [Deutsch] and [Baird] would be primary Guarantors of the Bridgewater financing; and b) [Deutsch] and [Baird] would indemnify Minn in connection with the making of any guaranty." (Plaintiffs' SUF ¶ 18.) Moreover, in the Plaintiffs' SUF, the Plaintiffs assert that "[b]ut for Defendant's misrepresentations and fraudulent conduct, including his delivery of a personal guaranty bearing Baird's forged signature, Lupe would have ceased providing services under its contract with Defendant's alter ego and Minn would not have personally guaranteed the [Loan]." (Minn Declaration ¶ 21.)

Finally, the Plaintiffs sustained damages as a proximate consequence of the false representation, as the Default Judgment awarded the Plaintiffs damages arising out of Deutsch's fraudulent conduct, and the Plaintiffs' SUF makes clear that "the damages awarded in the [Minnesota Action] were incurred in reasonable reliance on Defendant's misrepresentations and fraudulent conduct." (*Id.* ¶ 22.)

## IV.     CONCLUSION

For the above reasons, the Court finds that the obligation the Debtor owes to the Plaintiffs is determined to be **NONDISCHARGEABLE**.

**IT IS SO ORDERED.**

Dated: October 18, 2017
New York, NY

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge